UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOYCE ANDERSON, ) | |
| ) | |
| Plaintiff, ) | No. 3:09-cv-01117 |
| ) | |
| v. ) | |
| ) | JUDGE SHARP |
| LIFE INSURANCE COMPANY OF ) | MAGISTRATE JUDGE KNOWLES |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Presently before the Court are cross-motions for judgment on the administrative record filed by Plaintiff Joyce Anderson (Docket Entry No. 16) and Defendant Life Insurance Company of North America (Docket Entry No. 14). Each party has filed a response. (*See* Docket Entry No. 20-1 (Plaintiff's Response) & 25 (Defendant's Response).) For the reasons discussed herein, the Court will deny Plaintiff's motion and grant Defendant's motion.

## FACTS

Plaintiff participated in the Affinion Long-Term Disability Plan, an employee welfare benefit plan subject to the Employee Retirement Income Security Act ("ERISA"). Defendant acted as plan administrator, determining eligibility for benefits and assuming responsibility for the payment of claims. The policy sets forth the following requirements for obtaining disability benefits:

> The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

1

(Administrative Record ("AR"), at 1476.)  The policy further explains:

> An Employee is Disabled if, because of Injury or Sickness,
> 1. he or she is unable to perform all the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings from working in his or her regular occupation[.]

(*Id.* at 1472.)[1]  The policy defines the "Benefit Waiting Period" as "the period of time an Employee must be continuously Disabled before Disability Benefits may be payable." (*Id.* at 1477.)  The policy's Schedule of Benefits specifies that the Benefit Waiting Period is 26 weeks.  (*Id.* at 1472.)

Plaintiff was employed at Affinion as a data entry operator. By Plaintiff's own admission, her "medical records reveal a woman in progressive decline." (Docket Entry No. 17, at 5 n.3.)  Her health issues include, *inter alia*, hypertension, diabetes, renal disease, and gastroesophageal reflux disease.  Most relevant to her line of work, Plaintiff suffers from severe, chronic pain in her hands and wrists.

Plaintiff quit her job on November 8, 2005.  She applied through counsel for long-term disability benefits under Defendant's policy on October 27, 2006.  (AR, at 2076-2085.)  Katrina Lovshin, a disability claims manager for Defendant, wrote to Plaintiff on January 8, 2007, stating that her claim for long-term disability benefits was not approved. (*Id.* at 821-23.)  As Lovshin explained, because Plaintiff's period of claimed disability began on the day she quit work, the twenty-six week benefit waiting period would not have been satisfied until May 10, 2006.  Based on Defendant's review of Plaintiff's file, two of Plaintiff's physicians had released her to return to work during those twenty-six

---

[1] The policy includes a second definition of "disabled" that applies once disability benefits have been payable for two years and is not relevant to the facts of this case.

weeks. (*See id.* at 1765 (orthopedic surgeon Donald H. Lee opining on January 11, 2006 that Plaintiff could return to work), 1745 (cardiologist Mark A. Zenker opining on March 9, 2006 that Plaintiff had been disabled since December 5, 2005 because of vascular disease issues but was then able to return to work).) None of Plaintiff's other physicians documented any work restrictions. Therefore, Plaintiff had not satisfied the policy's benefit waiting period.

Plaintiff filed her appeal on July 24, 2007. (AR, at 846.) Andrea Russo, an appeal claim manager for Defendant, wrote to Plaintiff's counsel on November 14, 2007, stating that Defendant affirmed its prior denial of Plaintiff's claim. (*Id.* at 562-64.) Based on a medical director's review, Defendant concluded that "the medical record does not support a continuous functional loss as of the time [Plaintiff] ceased working in November 2005 throughout the benefit waiting period to the benefit start date of May 10, 2006." (*Id.* at 563.) All the medical records Plaintiff submitted with the appeal were dated from January 2007 forward and thus "not relevant to the time period that [Defendant] must evaluate." (*Id.*) If Plaintiff wished to have Defendant's decision reviewed, she would need to submit documentation that "support[s] restrictions preventing [Plaintiff] from performing [her] regular occupation as of November 9, 2005 throughout the benefit waiting period to May 10, 2006 and to the present." (*Id.*) On November 20, 2007, Russo sent Plaintiff's counsel a follow-up letter acknowledging receipt of medical records for the October 23-29, 2007 period. (*Id.* at 521.) Russo explained that Plaintiff could request a voluntary appeal review but would need to provide "medical documentation relevant to the period in question of November 9, 2005 through May 10, 2006." (*Id.*)

3

Plaintiff's counsel filed a notice of Plaintiff's second appeal on April 22, 2008, stating that additional supporting documentation would follow. (AR, at 556.) Plaintiff submitted nearly four hundred pages of supporting documents on May 1, 2008. (*Id.* at 120-519.) These documents included a fully favorable Social Security Administration decision finding that Plaintiff had been "disabled" within the meaning of the Social Security Act since November 9, 2005. (*Id.* at 481-87.) Plaintiff also submitted a "Medical Summary" of her medical records from February 7, 2003 to December 5, 2007 (*id.* at 488-519) and a personal affidavit describing how the hand and wrist pain compelled her to quit her job (*id.* at 480).

In the subsequent months, the parties exchanged a series of letters disputing the adequacy of Plaintiff's supporting documentation. Defendant's correspondence maintained that Plaintiff had not submitted "medical information . . . relevant to the time period in question" of November 5, 2005 to May 10, 2006. (*See, e.g.*, AR, at 118, 1501.) Plaintiff repeatedly asked Defendant to clarify its definition of "relevant" and explain why the already submitted materials did not qualify as "relevant." (*See, e.g., id.* at 119, 1567.)

Ultimately, on August 21, 2008, Defendant wrote to Plaintiff's counsel that any appeal of Plaintiff's claim denial had to be submitted by October 21, 2008. (*Id.* at 1495.) This correspondence did not reference the notice of second appeal that Plaintiff had already filed. Plaintiff did not respond to that letter but instead filed the present lawsuit on November 23, 2009. (*See* Docket Entry No. 1.)

4

## ANALYSIS

**I.     Legal Standard**

Plaintiff brought this action to compel the payment of long-term disability benefits under ERISA.  *See* 29 U.S.C.A. §§ 1132(a)(1)(B), (a)(3) (2009).  The Court reviews the denial of benefits under a de novo standard unless "the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009).  Where, as here, the policy requires "[s]atisfactory proof of [d]isability" in order to obtain benefits (AR, at 1476), the Sixth Circuit has held that such language is sufficiently express to vest discretionary authority in the plan administrator.[2]  *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996) (discussing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983-84 (6th Cir. 1991)); *accord Likas v. Life Ins. Co. of N. Am.*, 347 F. App'x 162, 166 (6th Cir. 2009).  Because of the plan administrator's discretionary authority, this Court reviews the denial of benefits under the arbitrary and capricious standard.  *Yeager*, 88 F.3d at 381.

The Sixth Circuit's opinion in *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) thoroughly summarizes the arbitrary and capricious standard:

> "This standard 'is the least demanding form of judicial review of administrative action. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" [*Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)] (alteration in original) (quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442,* 64 F.3d 238, 241 (6th Cir. 1995)). Consequently, a decision will be upheld "'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Id.* (quoting *Baker v. United Mine Workers of America Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991)).  "[T]he ultimate issue in an ERISA denial

---

[2] Plaintiff admits that the plan gives Defendant discretionary authority to determine a claimant's eligibility for benefits.  (Docket Entry No. 17, at 2.)

of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.,* 313 F.3d 356, 362 (6th Cir. 2002).

While the arbitrary and capricious standard is deferential, "'it is not, however, without some teeth.'" *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "[M]erely because our review must be deferential does not mean our review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.,* 405 F.3d 373, 379 (6th Cir. 2005). The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald,* 347 F.3d at 172.

In reviewing whether the denial of benefits was arbitrary and capricious, the Court considers the conflict of interest inherent in a plan administrator both determining benefit eligibility and paying those benefits. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005) (citing *Killian*, 152 F.3d at 521). The conflict is relevant to the review if the record contains evidence the conflict actually influenced the plan administrator's decision. *Evans*, 434 F.3d at 876 (citing *Carr v. Reliance Std. Life Ins. Co.*, 363 F.3d 604, 606 n.2 (6th Cir. 2004)). Similarly, a favorable determination for Social Security benefits "does not make [the claimant] automatically entitled to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's." *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445-46 (6th Cir. 2009) (citing *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005)). Nonetheless, where the plan administrator fails to explain why it took a position differently from the Social Security Administration, the reviewing court should weigh that factor in favor of a finding that the decision was arbitrary and capricious if the administrator "'(1) encourages the applicant to apply for Social Security disability payments

6

[and] (2) financially benefits from the applicant's receipt of Social Security[.]'" *Id.* at 446 (quoting *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008)).

## II. Review of Defendant's Decision

Applying the arbitrary and capricious standard to this case, Defendant denied Plaintiff's claim because Plaintiff's medical documentation did not establish a continuous disability during the twenty-six-week benefit waiting period. Instead, the records from Plaintiff's treating physicians indicated that Plaintiff could have returned to work during that period. During Plaintiff's appeal of Defendant's decision, the parties' representatives became embroiled in a circuitous exchange of letters regarding what additional medical documents would be "relevant" to the benefit waiting period. While Defendant did not necessarily provide the clearest responses to the inquiries of Plaintiff's counsel, Defendant's explanation for denying benefits is adequately well-reasoned. The medical record indicated that Plaintiff could have returned to work during the benefit waiting period, and thus Plaintiff did not meet the policy's definition of "disabled" for the entire benefit waiting period. Continuous disability during the benefit waiting period is a *sine qua non* for obtaining benefits under the policy.

As required by Sixth Circuit law, the Court acknowledges the inherent conflict of interest in Defendant's responsibilities both to determine eligibility for benefits and to pay qualifying claims. *Gismondi*, 408 F.3d at 299. However, the conflict becomes relevant only if some evidence indicates that the conflict actually influenced Defendant's decision in this case. *Evans*, 434 F.3d at 876. Finding no such evidence in the record in this case (other than Defendant's substantive decision to deny benefits), the Court does not give this factor further consideration.

Also, the Court explicitly recognizes the favorable determination that Plaintiff received from the Social Security Administration, which found her disabled dating back to November 9,

2005.  Defendant's correspondence with Plaintiff never explained why Defendant was taking a different position from the Social Security Administration.  Furthermore, the administrative record, including specific terms of the policy, establishes that Defendant both encouraged Plaintiff to apply for Social Security disability and financially benefited from Plaintiff's receipt of Social Security benefits.  Defendant retained Advantage 2000 Consultants, Inc. to represent Plaintiff in her claim for Social Security benefits.  (AR, at 1907-27), and the policy allows Defendant to penalize Plaintiff if she failed to participate or cooperate with the application for Social Security benefits (*id.* at 1481).  Also, the payable disability benefit under the policy can be reduced by the receipt of Social Security benefits.  (*Id.* at 1479.)  Under these circumstances, Plaintiff's fully favorable determination from the Social Security Administration is a factor that weighs in favor of a finding that Defendant's decision was arbitrary and capricious.  *DeLisle*, 558 F.3d at 446.

That factor alone, however, is not enough to overturn the plan administrator's decision. Consistent with Sixth Circuit case law, other federal courts of appeals have concluded that "[w]hile Social Security decisions, if available, are instructive, these determinations are not dispositive[.]"  *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1046-47 (7th Cir. 2004) (citing *Whatley v. CAN Ins. Co.*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999), and *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 798 (8th Cir. 2002)).  In particular, the case at bar lacks the other factors that the Sixth Circuit has relied on in reversing a plan administrator's decision.  For example, in *Glenn v. MetLife*, the plan administrator disregarded the opinion of the claimant's only treating physician, who concluded that the claimant was not capable of returning to work.  461 F.3d 660, 669-71 (6th Cir. 2006).  Also, in *Calvert v. Firstar Finance, Inc.*, the plan administrator retained a physician to conduct a file review that ignored

the treating physician's opinion that the claimant could not perform any work and the various medical records supporting that opinion. 409 F.3d 286, 295-96 (6th Cir. 2005). Here, by contrast, Defendant based its decision on the medical records from Plaintiff's own treating physicians. Two of those physicians opined that Plaintiff could return to work during the benefit waiting period, and no other physician said that Plaintiff could not work.

Plaintiff also raises various technical problems in Defendant's handling of Plaintiff's second, voluntary appeal. However, the Court's function is merely to determine whether the ultimate decision to deny benefits, rather than any discrete action during the review process, was arbitrary and capricious. *Evans*, 434 F.3d at 876 (quoting *Spangler*, 313 F.3d at 362). The medical records of Plaintiff's ability to return to work during the benefit waiting period provide substantial evidence and a reasoned explanation for Defendant's decision to deny Plaintiff's claim for disability benefits. Defendant offered Plaintiff ample opportunity to submit contrary medical evidence concerning Plaintiff's condition during the benefit waiting period. Plaintiff only submitted the legal opinion of the Social Security Administration, her personal affidavit, and a summary of the medical records already considered. Defendant's decision to deny benefits was not arbitrary and capricious.

## **CONCLUSION**

For all of the reasons stated, Plaintiff's Motion for Judgment on the Administrative Record (Docket Entry No. 16) will be denied. Defendant's Motion for Judgment on the Administrative Record (Docket Entry No. 14) will be granted. The case will be dismissed with prejudice.

An appropriate Order shall enter.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE